**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |
|---|---|
| **ESTATE OF DERRICK STATON, et al.,**    *   *Plaintiff,* | |
|    * | |
| v.    * | Case No.: 8:20-cv-03628-PWG |
| **GARY L. BOTTALICO, et al.,**    *   *Defendants.* | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION AND ORDER**

This Memorandum Opinion and Order addresses the pre-motion letter filed by Defendant State of Maryland ("State"), ECF 8, and the pre-motion letter filed by Washington Metropolitan Transit Authority ("WMATA") and Officer Gary Bottalico, ECF 10. Both letters have been construed as Motions to Dismiss. *See* ECF 11. The Motions have been fully briefed[1] in letter form, and I have determined that no hearing is necessary. *See* Local Rule 105.6. For the reasons explained below, the Motions to Dismiss are granted and this case is dismissed.[2]

**FACTUAL AND PROCEDURAL BACKGROUND**

On January 18, 2018, then-sixteen-year-old Derrick Staton was crossing the road at the intersection Chadd's Ford Road and Crain Highway/Route US 301 when he was tragically hit by a Metropolitan Transit Authority vehicle operated by Defendant Officer Gary Bottalico. ECF 1,

---

[1] ECF 8, State of Maryland's Motion to Dismiss ("State MTD"); ECF 12, Plaintiffs' Letter in Opposition to State MTD ("Pl. Opp. to State"); ECF 15, State of Maryland's Letter in reply to Pl. Opp. to State ("State Reply"); ECF 10, WMATA's Motion to Dismiss ("WMATA MTD"); ECF 14, Plaintiffs' Letter in Opposition to WMATA MTD ("Pl. Opp. to WMATA"); ECF 16, WMATA's Letter in reply to Pl. Opp. to WMATA ("WMATA Reply").

[2] This Memorandum Opinion does not address the merits of Officer Bottalico's proposed Motion to Dismiss the Plaintiffs' gross negligence claim under Fed. R. Civ. P. 12(b)(6).

1

Complaint ("Compl.") ¶¶ 10; 15. Derrick was pronounced dead at the scene of the accident. *Id.* ¶ 19. He is survived by his mother, Plaintiff Marla Houston, who is also the administratrix of his Estate. *Id.* ¶¶ 24–25.

Ms. Houston filed this action on December 15, 2020, both in her individual capacity and as the administratrix of the Estate of Derrick Station. *See generally* Compl. The Complaint variously asserts four causes of action against the three defendants. *Id.* Count I asserts a claim for "Wrongful Death/Vicarious Liability" and alleges that Officer Botallico wrongfully caused Derrick's death, and that his employer, WMATA, is vicariously liable for his conduct. *Id.* ¶¶ 27–31. Count II alleges that the State of Maryland breached its obligation to design and construct safe roads. *Id.* ¶¶32–35. Count III asserts a claim against Officer Botallico and WMATA for negligent infliction of emotional distress. *Id.* ¶¶ 36–40. And Count IV alleges that WMATA negligently trained and/or supervised Officer Botallico, which caused Derrick's death. *Id.* ¶¶ 41–44.

The State of Maryland urges this Court to dismiss Count II of the Complaint because the State is immune from prosecution in federal court under the Eleventh Amendment. State MTD at 1. WMATA also seeks dismissal of all claims against it on immunity grounds. WMATA MTD at 1. WMATA and Officer Bottalico both seek dismissal of Count III, because Negligent Infliction of Emotional Distress is not a viable cause of action under Maryland law. *Id.* at 2.

## STANDARD OF REVIEW

Fed. R. Civ. P. 12(b)(6) provides that a complaint must be dismissed if it "fails to state a claim upon which relief can be granted." "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct

2

alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," i*d*. at 678–79, but all factual allegations presented in the complaint must be construed "in the light most favorable to [the] plaintiff." *Adcock v. Freightliner, LLC*, 550 F.3d 369, 374 (4th Cir. 2008).

## DISCUSSION

### I. The State of Maryland is immune from prosecution in this Court under the Eleventh Amendment.

The State argues that it is immune from prosecution in this action because, "absent consent, the State maintains its sovereign immunity from suit in federal courts" under the Eleventh Amendment to the U. S. Constitution. State MTD at 1. The State is correct.

The Eleventh Amendment provides that the "judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the Unite States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The U.S. Supreme Court has long interpreted the Eleventh Amendment to bar federal courts from entertaining "a suit brought by a citizen against his own state." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984) (citing *Hans v. Louisiana*, 134 U.S. 1, 10 (1890)). "Unless a State has consented to the waiver of its immunity under the Eleventh Amendment . . . the State may not be sued in federal court by private parties[.]" *Gross v. Morgan State Univ.*, 308 F. Supp. 3d 861, 865 (D. Md. 2018).

Ms. Houston raises multiple arguments in response to the State's claim of Eleventh Amendment immunity. First, Ms. Houston argues that the State "incorrectly throws the 11th Amendment as a bar to a state claim that may be procedural in federal court per *Pulliam* [*v. Allen*, 466 U.S. 522 (1984).]." Opp. to State MTD at 2. But *Pulliam*, a case about the effects of *judicial*

3

immunity in a 1983 claim, does not mention the Eleventh Amendment and is generally irrelevant to this case. This argument must be rejected.

Next, Ms. Houston argues that the doctrine of pendent jurisdiction, which allows federal courts to hear state law claims that closely relate to claims properly within the federal courts' original jurisdiction, overrides the protections the Eleventh Amendment affords the State. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966). The U.S. Supreme Court considered and rejected this argument in *Pennhurst State School & Hosp. v. Halderman*, which held that "neither pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment." 465 U.S. 89, 121 (1984). "Since *Pennhurst,* the Fourth Circuit has repeatedly affirmed trial courts that dismissed pendent state law claims against state officials." *Citizens for the Scenic Severn River Bridge, Inc. v. Skinner*, 802 F. Supp. 1325, 1340 (D. Md. 1991), *aff'd sub nom. Citizens for Scenic Severn River Bridge, Inc. v. Skinner*, 972 F.2d 338 (4th Cir. 1992) (collecting cases). Accordingly, this argument, too, must be rejected.

Finally, Ms. Houston argues that the State has waived its Eleventh Amendment immunity with respect to claims made against it under the Maryland Tort Claims Act ("MTCA"). Opp. to State MTD at 2. "A court may find that a state has waived its Eleventh Amendment immunity in one of two ways: (1) a state makes a clear distinction that it intends to submit itself to federal jurisdiction; or (2) a state voluntarily invokes federal jurisdiction." *MedSense, LLC v. Univ. Sys. of Maryland,* 420 F. Supp. 3d 382, 393 (D. Md. 2019). Only the first variety of waiver could theoretically be applicable in this case, where the State has been called into federal court by a private party.

The test for determining whether a State has waived its Eleventh Amendment protections is stringent. *Id.* "In deciding whether a State has waived its constitutional protection under the Eleventh Amendment," courts "will find waiver only where stated 'by the most express language

4

or by such overwhelming implications from the text as (will) leave no room for any other reasonable construction.'" *Edelman v. Jordan*, 415 U.S. 651, 673 (1974) (quoting *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171 (1909)).

The Maryland Court of Appeals, which has authority to determine when the State has consented to suit in federal court, *Lee-Thomas v. Prince George's Cty. Pub. Sch.*, 666 F.3d 244, 252 (4th Cir. 2012), has consistently held that "any waiver of that immunity must come from the Legislature," *i.e.*, the Maryland General Assembly. *State v. Sharafeldin*, 854 A.2d 1208, 1214 (Md. 2004). Ms. Houston contends that the General Assembly has done so with respect to the MTCA, and specifically that "the MTCA's overwhelming implication is that Maryland can be sued in state and federal court when the state has an obligation to maintain and design state roads." Opp. to State MTD at 2. Nonsense.

The MTCA provides in pertinent part that "[s]ubject to the exclusions and limitations in this subtitle and notwithstanding any other provision of law, the immunity of the State and of its units is waived as to a tort action, ***in a court of the State***[.]" Md. Code, State Government Article § 12-103 (emphasis added). It also provides that the MTCA does not "limit any other law" that "waives the sovereign immunity of the State or the units of the State government in tort" or "waive any right or defense of the State or its units, officials, or employees in an action in a court of the United States or any other state, ***including any defense that is available under the 11th Amendment to the United States Constitution***[.]" *Id.* § 12-104 (emphasis added). Far from implying a waiver of the State's Eleventh Amendment protections, the statutory language of the MTCA expressly and unquestionably preserves them. The Maryland Court of Appeals has confirmed that interpretation. *See Proctor v. WMATA*, 990 A.2d 1048, 1051–52 (Md. 2010) ("[T]he notable features of the MTCA's waiver of sovereign immunity are . . . the State retains its Eleventh Amendment immunity to suit in federal court[.]"); s*ee also Bell v. Univ. of Maryland*

*Coll. Park Campus Facilities Mgmt.*, No. CV PX-17-1655, 2018 WL 3008325, at *5 (D. Md. June 14, 2018). Because the State has not waived its Eleventh Amendment immunity, this Court lacks jurisdiction over Count II of Ms. Houston's Complaint.

Accordingly, Count II of the Complaint must be dismissed without prejudice to refiling in the appropriate State court.[3]

## II. Negligent Infliction of Emotional Distress is not a viable cause of action under Maryland law.

WMATA and Officer Bottalico move to dismiss Count III, which asserts a claim for Negligent Infliction of Emotional Distress, because no such cause of action exists under Maryland law. WMATA MTD at 2 (citing *Miller v. Bristol-Myers Squibb Co.*, 121 F. Supp. 2d 831, 839 (D. Md. 2000)). Ms. Houston "concedes that Negligent Infliction of emotional distress should be merged as an element of damage related to the gross negligence claim alleged by Plaintiff in Count I (*see Swanson v. Wilde*, 74 Md. App. 57 (1988)), making emotional distress a part of damages in the underlying tort. " Opp. to WMATA MTD at 2. She agrees to "withdraw this separate claim and apologize[s] for this oversight." *Id.*

Accordingly, Count III of the Complaint is dismissed. And because the asserted cause of action is not viable under Maryland law, it is dismissed with prejudice. *See Kwang Dong Pharm. Co. v. Han*, 205 F. Supp. 2d 489, 497 (D. Md. 2002).

## III. WMATA is immune from prosecution under the WMATA Compact.

WMATA moves to dismiss Counts I and IV of the Complaint and asserts that it is immune from prosecution for both Officer Bottalico's allegedly negligent driving, and for WMATA's

---

[3] *See Smyth v. Stirling*, No. 0:18-CV-01218-RBH, 2018 WL 6444374, at *2 n. 5 (D.S.C. Dec. 10, 2018).

allegedly negligent training of Officer Bottalico. WMATA's Letter at 2. For the reasons explained below, WMATA's Motion is granted.

Under Section 80 of the WMATA Compact,[4] WMATA is "liable for its contracts and for its torts and those of its directors, officers, employees and agents committed in the conduct of any proprietary function, in accordance with the law of the applicable signatory (including rules on conflict of laws), but shall not be liable for any torts occurring in the performance of a governmental function." Md. Code, Transp. § 10-204(80). The Fourth Circuit has adopted from the D.C. Circuit "two alternate tests to assist in the identification of 'governmental' functions under the Compact." *Smith v. Washington Metro. Area Transit Auth.*, 290 F.3d 201, 207 (4th Cir. 2002) (citing *Burkhart*, 112 F.3d at 1216). First, if WMATA "is engaged in a quintessential governmental function, its activities fall within the scope of its immunity." *Id.* If it is not "engaged in such a governmental function . . . a court must proceed to the second inquiry, and it must determine whether the challenged activity is discretionary or ministerial." *Id.*

WMATA argues that it is immune from vicarious liability for Officer Bottalico's allegedly negligent driving because "the alleged accident occurred while Officer Bottalico was engaged in WMATA's police function." WMATA Letter at 1. I agree.

It is "firmly established" in the Fourth Circuit that "the operation of a police force is a governmental function and the acts or omission in connection therewith ordinarily do not give rise to liability." *Martin v. WMATA*, 667 F.2d 435, 436 (4th Cir. 1981). Indeed, courts describe law enforcement as a "quintessential governmental function" for which WMATA is absolutely immune under the WMATA Compact. *See, e.g. Beebe v. Washington Metro. Area Transit Auth.*,

---

[4] "WMATA was created as the result of a compact signed by Maryland, Virginia, and the District of Columbia and consented to by Congress." *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1216 (D.C. Cir. 1997).

7

129 F.3d 1283, 1287 (D.C. Cir. 1997).[5] The operation of WMATA's police force, "includes those activities undertaken by transit officers" that are "comparable to those executed by their counterparts in the respective jurisdictions." *Gray v. Sarles*, No. CIV.A. DKC 14-2939, 2015 WL 4092455, at *3 (D. Md. July 6, 2015) (quoting *Hall v. WMATA*, 468 A.2d 970, 973 (D.C. 1983)).

In her Response in Opposition to WMATA's Motion to Dismiss, Ms. Houston imagines that the fact that Officer Bottalico was driving somehow changes the landscape. Opp. to WMATA MTD at 1. She specifically cites the "negligent operation of a vehicle" as "a prime example of negligence not immune and for which the government is liable." *Id*. That is simply untrue. Operating police vehicles is part of ordinary police practice, and the Plaintiffs cite no applicable law[6] indicating that cases involving negligent driving by police officers are exempt from WMATA's general immunity for its police activities. *See Burns v. Washington Metro. Area Transit Auth*., 488 F. Supp. 3d 210, 216 (D. Md. 2020) ("Specifically, courts have deemed WMATA's police activities to be an exercise of a governmental function."). Furthermore, D.C. and Maryland Courts have found WMATA and other police departments immune from prosecution in cases involving an officer's negligent driving. *See, e.g., Hawkins v. Washington Metro. Area Transit Auth.*, 311 F. Supp. 3d 94, 104 (D.D.C. 2018) ("Because such police activities [including driving a marked Metro Transit Police vehicle] amount to a governmental function, WMATA cannot be held liable for the alleged torts that occurred during those activities."); *District of Columbia v. Chambers*, 965 A.2d 5 (D.C. 2009) (holding that the District was immune in lawsuit arising out of motor vehicle crash cause by alleged negligence by police in pursuing suspect).

---

[5] *See also Dant v. D.C.*, 829 F.2d 69, 74 (D.C. Cir. 1987); *Hutcherson v. Washington Metro. Area Transit Auth.*, No. CIV. 08-3044-RWT, 2009 WL 2168998, at *5 (D. Md. July 16, 2009).
[6] The cases the Plaintiffs cite for this proposition do not involve police work at all. *See Dalehite v. United States*, 346 U.S. 15, 28 (1953); *Smith v. Washington Metro. Area Transit Auth*., 290 F.3d 201, 206 (4th Cir. 2002); *United States v. Gaubert*, 499 U.S. 315, 325 (1991).

Accordingly, because WMATA is immune for torts arising out of the exercise of governmental functions, and because the operation of the WMATA police force is such a function, Count I must be dismissed as to WMATA. And because Count I is dismissed on the basis of WMATA's absolute immunity under the Compact, it is dismissed with prejudice as to WMATA.[7]

The result is the same with respect to Count IV, despite Ms. Houston's arguments to the contrary.[8] Count IV alleges that WMATA negligently trained and/or supervised Officer Bottalico, and that WMATA's negligence resulted in the accident that caused Derrick Staton's death. Compl. ¶¶ 41–44. The D.C. Circuit has long established that "decisions concerning the hiring, training, and supervising of WMATA employees are discretionary in nature, and thus immune from judicial review." *Burkhart*, 112 F.3d at 1217. The D.C. Circuit explained:

> The WMATA compact confers upon WMATA broad power to "[c]reate and abolish ... employments" and "provide for the qualification, appointment, [and]

---

[7] Count I survives as against Officer Bottalico. *See Griggs v. Wash. Metro. Area Transit Auth.,* 232 F.3d 917, 922 (D.C.Cir.2000) ("It necessarily follows that while § 80 of the Compact cloaks WMATA itself with absolute immunity for torts arising in the exercise of governmental functions, under § 76(b) of the Compact, WMATA's Metro Transit Police officers . . . are not able to invoke such absolute immunity as a bar to suit for their torts[.]").

[8] Ms. Houston argues, citing *Biscoe v. Arlington County*, 738 F.2d 1352 (D.C. Cir. 1984), that training law enforcement officers is a ministerial duty for which WMATA may be held liable. Pl. Opp. to WMATA at 2. The D.C. Circuit has made unmistakable that *Biscoe* does not apply to the WMATA Compact:

> In *Biscoe*, we held that, under D.C. law, the activities of "supervising and instructing" police officers are ministerial in that they "involve day-to-day operational matters, not planning and policy." However, in *United States v. Gaubert*, 499 U.S. 315, 323 (1991), the Supreme Court held that discretionary activity, for purposes of the FTCA, can include operational activities and "is not confined to the policy or planning level." **Thus, the foundation upon which we based our discretionary/ministerial distinction in Biscoe was repudiated as a matter of federal law in Gaubert**. . . . [T]he question of whether an activity is a governmental function for purposes of the WMATA Compact is one of federal law. **Therefore, *Gaubert*, not *Biscoe*, must guide our determination of whether hiring, training, or supervising employees are discretionary functions for purposes of the WMATA Compact.**

*Burkhart*, 112 F.3d at 1216. (internal quotations and citations omitted) (emphasis added).

> removal ... of its ... employees without regard to the laws of any of the signatories," D.C.CODE § 1–2431(12)(g); "[e]stablish, in its discretion, a personnel system based on merit and fitness," *id.* § 1–2431(12)(h); and "[c]ontrol and regulate ... the service to be rendered," *id.* § 1–2431(12)(j). These provision[s] hardly constrain WMATA's determination of whom it will employ or how it will train and supervise such employees. Thus, WMATA has choices to make.
>
> The hiring, training, and supervision choices that WMATA faces are choices susceptible to policy judgment. The hiring decisions of a public entity require consideration of numerous factors, including budgetary constraints, public perception, economic conditions, individual backgrounds, office diversity, experience and employer intuition. Similarly, **supervision decisions involve a complex balancing of budgetary considerations, employee privacy rights, and the need to ensure public safety. The extent of training with which to provide employees requires consideration of fiscal constraints, public safety, the complexity of the task involved, the degree of harm a wayward employee might cause, and the extent to which employees have deviated from accepted norms in the past. Such decisions are surely among those involving the exercise of political, social, or economic judgment**.
>
> **<u>As a result, we conclude that the hiring, training, and supervision of WMATA personnel are governmental functions. WMATA is therefore immune from suit for negligence in the performance of such functions.</u>**

*Id.* (alterations in original) (internal citations omitted) (emphasis added).

In light of this clear controlling authority, WMATA's Motion to Dismiss Count IV of the Complaint must be granted. And because Count IV is dismissed on the basis of WMATA's absolute immunity under the Compact, it is dismissed with prejudice.

### IV.    I decline to exercise supplemental jurisdiction over the sole remaining state law claim.

In light of the foregoing analysis, the sole remaining cause of action in this case is Ms. Houston's state law claim against Officer Bottalico, which alleges that his gross negligence led to the wrongful death of Derrick Staton. Compl. ¶¶ 27–31.

Pursuant to 28 U.S.C. § 1367(c)(3), "district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." The Fourth Circuit has held that "a district court has inherent power to

10

dismiss [a] case . . . provided the conditions set forth in § 1367(c) for declining to exercise supplemental jurisdiction have been met." *Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 617 (4th Cir. 2001). The conditions of § 1367(c)(3) are met in this case. Pursuant to Section 81 of the WMATA Compact, the "United States District Courts shall have original jurisdiction, concurrent with the courts of Maryland, Virginia, and the District of Columbia, of all actions brought by or against" WMATA. Md. Code, Transp. § 10-204(81). Here, all claims against WMATA are dismissed with prejudice. *See* Section III, *above*. And because I have dismissed the only claims over which the Court has original jurisdiction, I decline to exercise supplemental jurisdiction over the remaining state law claim against Officer Bottalico.

Accordingly, Count I as against Officer Bottalico is dismissed without prejudice to refiling in the appropriate state court.

## CONCLUSION

For the reasons outlined in this Memorandum Opinion, the State of Maryland's Motion to Dismiss Count II of the Complaint, ECF 8, Officer Bottalico's Motion to Dismiss Count III, ECF 10, and WMATA's Motion to Dismiss Counts I, III, and IV, ECF 10, are GRANTED. The Court declines to exercise its supplemental jurisdiction over Count I as against Officer Bottalico pursuant to 28 U.S.C. § 1367(c)(3).

## **ORDER**

For the reasons stated in the foregoing Memorandum Opinion, it is hereby ORDERED that:

1. The State of Maryland's Motion to Dismiss, ECF 8, is GRANTED. All claims against the State of Maryland are hereby DISMISSED WITHOUT PREJUDICE TO REFILING IN THE APPROPRIATE STATE COURT.

2. Officer Bottalico's Motion to Dismiss, ECF 10, is GRANTED with respect to Count III of the Complaint. Count III of the Complaint is hereby DISMISSED WITH PREJUDICE as against Officer Bottalico.

3. Washington Metropolitan Transit Authority's Motion to Dismiss, ECF 10, is GRANTED. All claims against the Washington Metropolitan Area Transit Authority are hereby DISMISSED WITH PREJUDICE.

4. Because the Court declines to exercise supplemental jurisdiction over the remaining state law claim, this case is DISMISSED WITHOUT PREJUDICE TO REFILING IN THE APPROPRIATE STATE COURT.

5. The Clerk shall close this case.


Dated: April 15, 2022                                          /S/
                                                        Paul W. Grimm
                                                        United States District Judge